Good morning, everyone. We have five cases on the calendar this morning. Two of them will be argued. The three submitted cases are Perry v. Mary Ann Liebert Incorporated, United States v. Curry, and United States v. Benton. The two argued cases are Jing v. Whitaker and Louis Vuitton v. My Other Bag. I've been told by the clerk that counsel are present and ready to go on the first two cases, so we are ready to proceed with argument. Good morning, Your Honors. This is the case of Jing v. Whitaker. May it please this honorable court. Just last Friday, I received a letter from the government counsel dated February 28, 2019, and I presume the court has a copy of this letter as well. But I would like to correct an erroneous statement here, particularly on the second paragraph, line three, stating that the omission of the requirement attending anti-underground church classes as a condition of his release from detention. That is wrong, Your Honor, because the petitioner never stated that it was a condition of his release from detention. He was already released from detention, and when he was reporting before the police station and the police officers instructed him to attend these anti-underground classes, which led, since he refused to do so, this led to harassment, and it's not physical assault, but physical mistreatment. Now, these harassments were omitted by the petitioner from his credible fear interview and from his application merely because these were mere harassments. This was not the basis of his claim. This was not the persecutory event. He was consistent that his persecutory event, which was the basis of his claim, was the arrest, his arbitrary detention, and the beatings during those detention, the veracity of which was never questioned or in dispute. The material that came out on cross and that formed part of the basis for the IJ's decision, it doesn't seem unimportant, though. He had not mentioned before that there were several occasions, multiple occasions, on which he was instructed to attend these classes, and he was physically mistreated, slapped. And the IJ's taking this into account and considering it as a factor, it's hard to see how that's unreasonable in trying to make a credibility determination. So what am I missing? Your Honor, these acts of harassment, and this Court has already ruled that harassments do not rise to the level of persecution. To the mind of the petitioner, he did not mention these because the reason why he came to the United States to ask for asylum was because he was arrested, he was detained, and he was beaten. That was the persecutory event. He did not mention these harassments, and these harassments in no way embellish his claim. His claim was never questioned nor disputed. These acts of harassment never do not bolster or embellish his claim. If it was the intention of the petitioner to embellish or bolster his claim, he would have done so in his asylum application or during direct examination. How do they go to the heart of his claim? And under this Court's holding in Zhang v. Holder, shouldn't the Court find that under those circumstances here, he did in fact leave out credible information that could have been helpful to his application and uphold the BIA's decision? Your Honor, to his mind, these were mere acts of harassment. And if he was just being harassed this way, he would still be there, and he would, you know— But his testimony on cross was pretty detailed, that he was slapped at least five times, that in fact they harassed him several times at his home, and also when they met him on the streets. Isn't that pretty detailed information that could be helpful to his claim? Well, yes, it could be helpful to his claim, but it is not necessary to his claim of persecution because the persecutory event was the arrest, the detention, and the meetings during that detention. Was he ever asked on direct about incidents of harassment of this kind? No, Your Honor. And was he ever asked a question on direct in the general nature of, can you tell us anything else that happened to you in China at the hands of the police that might be relevant to your claim? No, he was not, Your Honor. The question at the direct examination was, how were you persecuted in China? And his answer was, his arrest, his detention, and his meetings. Because to him, that was the persecutory event. Mere harassment, anybody can live with those mere harassment. And the questions that he was responding to on cross were specific leading questions that asked him about medical treatment and asked him about the anti-house church classes that he had not brought up before. Your Honor, yes, and maybe the petitioner was wrong in not mentioning it. But to him, these were minor things, and he was not required, he was instructed to take these classes, and he refused. And he was not arrested for refusing. He did not lose his liberty for refusing to do so. He was harassed. And to him, that was an annoyance that, I mean, to us, we should, as lawyers perhaps, he should have included that. But that does not discount the fact that he has proven and satisfied the persecutory claim. Did he have counsel in connection with preparing his asylum application? I assume he did not at the credible fear interview, but maybe I should ask that too. Did he have counsel at the credible fear interview, and did he have counsel when he prepared his written application? Yes, he did, Your Honor. And I was the counsel, Your Honor. We always ask our clients to write the events of persecution, and that was what he stated. I did not even know about these acts of harassment, and to him, it did not matter. He concentrated on the acts of persecution. I mean, we don't draw out like, oh, what else and what else. Well, it might be useful in future to ask about additional information that, as you put it, might seem not important to the person, but that you as a lawyer would be able to use to make a stronger application. But, of course, I'm not asking you what you did ask or what counsel you did give. I'm just suggesting that might be a good idea. That indeed is a good idea, and I have learned my lesson, Your Honor. But with respect to this case, our point is that these mere harassments do not embellish his claim and should not be the ground for adverse credibility. This court, in the case of Gao Hongfei v. Sessions, which the government counsel thinks is not applicable, it is applicable in two aspects, because there the court has opined that omissions are not probative on credibility. It's less probative on credibility than inconsistencies, which cause the record. If I recall correctly, you were counsel on Gao as well. That's correct, Your Honor. And also in that case, Your Honor, the court said that the real ID Act, which should be taken into consideration here, requires that the fact finder should consider the totality of their circumstances and all relevant factors. However, in this case, it seems the immigration judge totally discounted or forgot the persecutory event and just concentrated on these omissions of mere harassment and based . . . Counsel, you would agree that the omissions in Gao Hong were much more minor than the omissions here, correct? That's correct, Your Honor. That's correct, Your Honor. But the court opined . . . . . . that the omission here that the I.J. relied on with respect to medical care, but there was no omission in that case with respect to acts of police harassment of the sort that we have here. Is that the point? Am I accurate about that? Yes, you are, Your Honor, but the I.J. should not cherry pick, Your Honor. Well, and the BIA only relied on the omission with respect to the police, not the omission with respect to medical care. Is that right? That's correct. That's correct. So, Your Honor, we feel that the I.J. was cherry picking on facts that would support adverse credibility and not considering the other relevant facts or the totality of the circumstances.  May it please the Court. Good morning. My name is Tracy Jones, and I'm appearing on behalf of the Respondent, the U.S. Attorney General. The Court should deny the petition for review in this case because substantial evidence supports the adverse credibility finding, and the record does not compel a contrary conclusion. The only substantial evidence that the government is relying on is the omission with respect to the police interventions and harassment or whatever we're going to call them, meeting him on the street or going to his house and telling him to go to these church meetings, right, and then slapping him. Yes, Your Honor. On page 83 of the record, the petitioner indicated the reasons for his fear of returning to China and why he fled. It was specifically that he was persecuted by the Chinese government because of his religious practices. So, therefore, the petitioner's omission of additional harm at the hands of the Chinese government supports the adverse credibility finding. The two omissions that the agency relied on was the refusal to attend the anti-underground church classes, and then also the omission of the five to six times that he was beaten. The petitioner mischaracterizes these ... He may be a little strong, yes? Well, the ... He says he was slapped on those occasions. Yes, and that's a physical mistreatment by the Chinese government. Isn't Ms. Fabular-Lau correct that if that was the only thing that happened, he would not have a claim for persecution, past persecution? It's continuing persecution that he's identifying with regards to ... I understand that, so the argument is that this is an additional supplemental act, but it's not one that in itself would constitute persecution. Well, under Gao, Your Honor, the court did say that if the omission is just additional details that's being added, that that is not sufficient to sustain the adverse credibility finding. But in this case, this isn't just an additional detail. This is actually additional persecution that this petitioner experienced. That was the question I was asking you. It is not in itself persecution. Is that not right? If this is all that happened, you would presumably be here arguing that the mistreatment did not amount to persecution. Well, this is the continuing persecution, Your Honor. I'm not quite sure ... I don't know why you won't answer the question I'm asking you. Okay. But the ... I understand your point is ... Yes. ... that these are additional incidents that contribute to an overall pattern of conduct. What I'm asking you is, and maybe there's no point belaboring it, in and of itself this would not be enough to be persecution. Well, this court has held that certain ... I know you don't like the word beatings, but that certain beatings can amount to persecution. In the context of a detention. Yes. That's Calabresi's opinion. All right. Well, maybe this is somehow in that context. But more importantly, these are things that he responded to, details that he provided, in response to leading questions by the government that specifically asked him about particular subjects that he had not been asked about before. Yes, that's correct, Your Honor. But despite Petitioner's counsel's claim, during her argument, in fact he was asked general questions in regards to what type of mistreatment he ... Could you give us examples of those questions? Sure. On page 86 of the record, Petitioner's counsel asked, what were your conditions with regards to the release? At that time, the only thing that the Petitioner discussed was the bail, the fact that he had to denounce his religion, and the fact that he had to report every two weeks to the police station. On page 87, the Petitioner's counsel asked ... So he did not mention the condition of being required to attend classes? No, Your Honor. Ms. Babler-Louse said this was not a condition of his release. This was something that was a direction that was given to him later, after he'd been released. Is that inaccurate? Well, the way that I read the record, it appeared that it was a condition, because on page, I believe it was 98, when he was detailing the events surrounding being told to attend these classes, he indicated that at one point in time that he was instructed when he went to go report to the police that he had to attend the class. How should we apply GAO in the government's view? How do we decide whether an omission is minor or not? Well, in GAO, it was the omission of medical treatment, in which this court determined that that omission of the medical treatment should not have been afforded as much weight as the agency did, because it had no effect on his actual persecution, which was corroborated by other evidence in the record. In this case, this Petitioner is adding additional details about persecution from her alleged persecutors, which is the Chinese government. So, therefore, this isn't just something that is a supplementary additional detail that's being provided, but, in fact, this is showing persecution that's qualitatively different. So GAO is limited to medical treatment? I assume it's limited only to minor medical treatment if he was in the hospital, if he comes up at the last minute and says he was in the hospital and had surgery and didn't get back to work for three months or something like that. That would not be a minor omission. Right. But the government's point here is that the omission of the fact that he was physically mistreated five to six times is not merely a supplement of his written asylum application, but, in fact, a totally different claim of continuing persecution that the Petitioner experienced. I also would like to note that on page 87 of the record, Petitioner's counsel specifically asked, did you have any problems after your release? And the only thing that the Petitioner indicated was that his employment was terminated. So, therefore, there were numerous times throughout the proceedings, both direct and cross, that the Petitioner was able to present this information but failed to do so. Therefore, based on the record, substantial evidence supports the adverse credibility finding, and the record does not compel a contrary conclusion. Therefore, this court should deny the petition for review. If there's no other questions, the government would like to rest. Thank you. Your Honor, the government counsel keeps on stating that there was a case of continuing persecution, and that is not our theory, Your Honor. These were acts of harassment that in no way affect the persecutory claim of the Petitioner. It was not a condition of his release. Otherwise, he would have stated it already. It came out after he was released from detention. The only point that I would be agreeing with the government counsel is that except for the two points that I already mentioned, because in Galbraith v. Sessions, it was a case of minor omissions. Now, this case here is really whether did the Petitioner embellish his claim, and these misharassments do not embellish his claim. If it was . . . It would be really helpful to think of it in that, did he embellish his claim or did he not? The I.J. is cast in the role of the person who has to make a judgment about whether a Petitioner is telling the truth or not, to make a credibility determination, and fact finders have to make judgments about is an omission so, so trivial that it's unfair to put too much weight on it, or is it so much part of the story that one would expect that this would have come out in telling the story originally, and if it comes out very late, or if it comes out only on cross, maybe a person is making it up. Does it really help to try and draw rules about how to do this as much as to rely on the immigration judge's best judgment with our review for cases where it really appears not to be supported by the record? Well, it was the, Your Honor, it was the I.J.'s immigration judge's theory that this is bolstering his claim, and even the Government Council echoes that, embellishing his claim, and which results through adverse credibility determination, which does not make sense or is illogical. So it is our position that there is no embellishing, and if it was the intention of the Petitioner to embellish his claim, he would have done that in his application or directly. You don't think that a claim is stronger when, in addition to a single arrest and beating, there is follow-up by the police that expresses further disapproval of his religious behavior and imposes physical, what shall we call it, harassment, assault, battery, inflicted on him in connection with the same religious practice that he is basing his asylum claim on? I agree with you, Your Honor, but I, as counsel, am very conservative that my clients do not bolster their claim. We would, and if, and it was not, this is not a case of bolstering his claim. He has already grounds for persecutory claim, and that is what we're concentrating on. The I.G. was also wrong with respect to using Shu Sha Lin versus McKay as an authority because that is not the case in this case. This is about embellishing or bolstering. Thank you, Your Honor. Thank you both, and we will take the matter under advisement.